IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEST VIRGINIA EARLY LEARNING ACADEMY at the CAPITOL, LLC,**
**Employer Below, Petitioner**

**v.) No. 24-ICA-472**     (JCN: 2022000121)

**SUSAN RABEL,**
**Claimant Below, Respondent**

**FILED**
**June 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner West Virginia Early Learning Academy at the Capitol, LLC ("WVELAC") appeals the October 30, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Susan Rabel filed a response.[1] WVELAC did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Ms. Dunlap a 6% permanent partial disability ("PPD") award, and instead granted her an additional 8% award for a total PPD award of 14%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

While employed by WVELAC as a teacher's aide, Ms. Rabel completed an Employees' and Physicians' Report of Occupational Injury or Disease dated May 18, 2021, asserting that she sustained an injury to her right wrist, arm, shoulder and back on May 17, 2021, when her foot got caught on a gate and she tripped. The physician's portion, also dated May 18, 2021, indicated an occupational right shoulder injury/sprain. On July 14, 2021, the claim administrator issued an order holding the claim compensable for an unspecified sprain of right shoulder. The order denied compensability for pre-existing degenerative changes in the right shoulder. Surgery to repair various injuries to the claimant's shoulder was performed on October 25, 2021. On February 18, 2022, the claim administrator issued an order adding right wrist sprain as a compensable condition in the claim; surgery to repair her wrist injury was performed on July 21, 2022.

---

[1] WVELAC is represented by Jeffrey B. Brannon, Esq. Ms. Rabel is represented by William B. Gerwig, III, Esq.

On February 7, 2023, Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME") of Ms. Rabel. Dr. Mukkamala found that Ms. Rabel had reached maximum medical improvement ("MMI") for her shoulder and wrist injuries. Dr. Mukkamala noted that the accepted diagnoses are a right wrist sprain and a right shoulder sprain, and that Ms. Rabel underwent surgery for her right shoulder on October 25, 2021, and for her right wrist on July 21, 2022. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993) ("*Guides*") Dr. Mukkamala opined that Ms. Rabel had 5% whole person impairment ("WPI") for the right shoulder and 1% WPI for the right wrist for a total of 6% WPI. The claim administrator issued an order dated February 14, 2023, which granted a 6% PPD award based on the February 7, 2023, report of Dr. Mukkamala. Ms. Rabel protested this order.

Bruce Guberman, M.D., performed an IME of Ms. Rabel on April 27, 2023. Dr. Guberman opined that Ms. Rabel had reached MMI. Using the *Guides*, Dr. Guberman found that Ms. Rabel has 4% upper extremity impairment ("UEI") for range of motion abnormalities of her right wrist, 14% UEI for range of motion abnormalities of the right shoulder, and 10% UEI for the resection arthroplasty of the distal clavicle. Dr. Guberman noted that the 10% for the resection arthroplasty, which is based on Table 27 of the *Guides*, is directly related to the surgery, which would not have been necessary if it were not for the compensable injury. Using the *Guides*' Combined Values Chart, these ratings were combined and converted to 15% WPI. Dr. Guberman found 1% impairment of Ms. Rabel's uninjured left shoulder, which he related to preexisting degenerative changes, thus, he apportioned that 1% from the injured right shoulder. Dr. Guberman found that Ms. Rabel has 14% WPI attributable to the compensable injury.

On January 30, 2024, David Soulsby, M.D., performed an IME of Ms. Rabel and found that she had reached MMI for her compensable injury. Using the *Guides*, Dr. Soulsby found that Ms. Rabel had 17% UEI, which converts to 10% WPI. Dr. Soulsby measured the range of motion of the uninjured left shoulder and found 2% WPI, which he subtracted from the right shoulder finding and assessed 8% WPI for the compensable injury. Dr. Soulsby reviewed Dr. Guberman's report and agreed with his finding that Ms. Rabel has 17% UEI for range of motion abnormalities. However, he disagreed with Dr. Guberman's finding of an additional 10% UEI from Table 27 of the *Guides* for resection of the distal clavicle. Dr. Soulsby stated that Ms. Rabel's resection had healed nicely, she had no pain or tenderness at the clavicle joint, and the Crossarm test was negative. Dr. Soulsby opined that the Range of Motion Model adequately covered Ms. Rabel's impairment.

On October 30, 2024, the Board reversed the claim administrator's order granting Ms. Rabel a 6% PPD award and granted Ms. Rabel an additional 8% PPD award, for a total of a 14% PPD award. The Board found that Dr. Guberman's report was the most persuasive, that Dr. Guberman explained the right shoulder surgery was directly related to

2

the compensable injury, and that Ms. Rabel established that she has 14 % impairment related to the compensable injury. WVELAC now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

WVELAC argues that Ms. Rabel is not entitled to an impairment rating for her "noncompensable" surgery. We disagree.

Here, the Board determined that Ms. Rabel established that she has 14% impairment related to the compensable injury. The Board noted that both Dr. Guberman and Dr. Soulsby appropriately considered Ms. Rabel's uninjured left shoulder in order to apportion impairment for degenerative changes in the left shoulder. The Board further noted that Dr. Mukkamala did not apportion, and he failed to address his decision not to apportion. The Board also noted that Dr. Soulsby chose not to include the resection arthroplasty in his impairment rating. Finally, the Board noted that Dr. Guberman opined that Ms. Rabel's resection arthroplasty would not have been performed but for the compensable injury. The Board found that Dr. Guberman's report was the most persuasive.

We find no merit in WVELAC's argument that the surgical procedure to resect Ms. Rabel's distal clavicle was not specifically authorized in the claim as no party has submitted evidence into the record below indicating that authorization for the surgery was denied by the claim administrator. None of the physician reports indicate that authorization for the surgery was denied, nor that Ms. Rabel sought the surgery outside of the claim.

3

Further, Dr. Guberman explained the surgery was directly connected to the shoulder injury and would "not have been performed if it were not for this injury."

Upon review, we conclude that the Board was not clearly wrong in finding that Ms. Rabel established that she has 14% impairment related to the compensable injury. Further, we conclude that the Board was not clearly wrong in finding that Dr. Guberman's report was the most persuasive considering that he appropriately apportioned for preexisting degenerative conditions, and he was the only physician to rate all components of the compensable injury. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order granting Ms. Rabel a 6% PPD award and instead granting her an additional 8% award for a total PPD award of 14%.

Accordingly, we affirm the Board's October 30, 2024, order.

Affirmed.

**ISSUED:** June 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

4